64    SUPREME COURT OF INDIANA.

The Evansville, Terre Haute, and Chicago Railroad Company *v.* Wright.

## THE EVANSVILLE, TERRE HAUTE, AND CHICAGO RAILROAD COMPANY *v.* WRIGHT.

ACCORD AND SATISFACTION.—*A Power not Coupled with an Interest.—Revocation.*—In a suit upon an instrument, by which the defendant promised to pay a certain sum to A., B., and C., in trust, to be expended within a county named, in constructing a railroad within certain limits, the persons named to select the corporation which should have the benefit of the subscription, an answer that when the instrument was executed by the defendant, it was agreed that if the railroad was located through the farm of the defendant, he should have the choice of paying the five hundred dollars or giving the right of way to the corporation, and that he had given such right of way, which had been accepted by the company, was held a sufficient defence, as an accord and satisfaction.  It was also held good on the ground that A., B., and C., held a power not coupled with an interest, and the power could be revoked before execution and the acceptance thereof by the corporation.

APPEAL from the Vermillion Circuit Court.

DOWNEY, J.—The appellant sued the appellee on the following instrument: "The subscribers promise to pay to John Whitcomb, J. B. Hedges, J. E. Kowles, Claude Mathews, P. Z. Anderson, Aquilla Nebaker and Benjamin F. Mosey, in trust for the purposes hereinafter mentioned, the sums set opposite to our names, and agree that the same as they become due, shall be collected without regard to valuation and appraisement laws, said money to be applied to the grading, bridging, and tying a railroad to be located within one-half mile of the town of Clinton in Vermillion county, Indiana, and to be in said county of Vermillion; and the trustees are to decide what company shall have the benefit of said subscriptions, and are not to make said selection until perfectly satisfied that the company have the will and ability to construct and equip said road making proper connections south or east.  Subscriptions are to be paid not to exceed ten per cent. every thirty days after the company getting said subscriptions commences work in said county, and shall all be expended therein, and the company receiving said subscriptions shall deliver to the subscribers, upon payment of said several sums, certificates of stock in

said company, said certificates bearing date with said payments and to the same tenor and effect as certificates issued for stock in original organization of said company.    If no railroad is commenced in one year from the date hereof, this subscription to be void.

"April 21st, 1869.

"Wesley Wright, $500, provided road is located within one mile of Salem Church."

It was alleged in the complaint that on the 20th day of November, 1869, the trustees aforesaid, being fully satisfied that the Evansville, Terre Haute, and Chicago Railroad Company had the will to construct and equip a railroad within one-half mile of the town of Clinton, Vermillion county, Indiana, and said company then being in the act of constructing a railroad from Tuttle's mills, Vigo county, Indiana, passing through the counties of Vigo and Vermillion, Indiana, to Danville, Illinois, and running north and south by the town of Clinton, and within one mile of Salem church, did then and there assign and transfer over said subscription to the aforesaid company; and the Evansville, Terre Haute, and Chicago Railroad Company, at the time of receiving the subscription, had commenced work in Vermillion county, Indiana, and had continued work on said road in said county ever since, until the grading of the same was then about completed.    The eight payments, amounting to four hundred dollars, had been required from the defendant on said subscription, which he had failed to pay.

It is further alleged that after the assignment of the subscription to the plaintiff the defendant got possession of the same and erased therefrom the figure five, making the amount standing opposite to his name nothing; wherefore, etc.

The defendant answered in three paragraphs, the first of which was a general denial, and the other three were special paragraphs.    On motion of the plaintiff, the third and fourth paragraphs were stricken out; a demurrer to the second was overruled; and a reply thereto in denial was filed.

VOL. XXXVIII.—5

There was a trial by the court, which ended in a finding for the defendant. The plaintiff moved for a new trial, which motion was overruled, and judgment was rendered on the finding. The evidence is in the record.

But two errors are assigned; first, the overruling of the demurrer to the second paragraph of the answer; and second, the refusal to grant a new trial.

The second paragraph of the answer alleges, after admitting the conditional execution and delivery of the instrument sued on, that the conditions have not been complied with, in this, that at the date of the written instrument sued on, Enoch and Samuel White were the agents of the said trustees, referred to in said complaint, for the purpose of soliciting and receiving subscriptions to aid in the construction of said railway; that the said Enoch White, with Henry B. Washburn, came to this defendant and solicited a subscription from him; that this defendant refused to subscribe anything until the road was located; that this defendant did propose to give five hundred dollars, if the road went west of his farm, or to give the right of way, or the five hundred dollars, if it went over or through his farm; that said Enoch White said it would not do to go out of the neighborhood without something, and that it was finally agreed upon by said Enoch White and this defendant, in the presence of the said Washburn, that the defendant should sign five hundred dollars on the condition that if the said road was located west of the farm of defendant, then the said subscription was to be binding, and the further condition that in the event of the location of said road through the farm of the defendant, then the defendant should have the right to elect either to give the right of way over, or through his farm, or to give the five hundred dollars so conditionally subscribed; that this defendant relying upon the representations of the said agent did then and there sign and deliver, upon the condition aforesaid, the said subscription of five hundred dollars to the said Enoch White, agent.

That the road was finally located through defendant's

farm, and that subsequent to the said signature of five hundred dollars and before the said agents and trustees had assigned said instrument sued on, to the said railway company, the said agents were appointed to obtain the right of way for said trustees for the use of said railway and desired the defendant to give the right of way over his farm; that the said Enoch White was then referred to the condition of the said five-hundred-dollar subscription by said defendant, and that it was then agreed by the said agents, and this defendant, that the defendant should elect to give the right of way, and not the five hundred dollars; and that the said subscription should be cancelled, and that this defendant relying upon the representations of the said agents, that said five-hundred-dollar subscription should be cancelled, did then and there sign away, and deliver to said agents, for the benefit of the said railway, the right of way across his farm; wherefore, etc.

It is objected to this paragraph of the answer that it sets up a parol agreement in contradiction of the instrument on which the action is predicated; that as nothing was stipulated in the writing, with reference to the right of the defendant to discharge the obligation, in the event that the road should run through or over his land by giving the right of way, it would be contradicting the writing to allow the defendant to allege and prove such an agreement. It is insisted, however, by counsel for the appellee, that as the parol agreement was executed by the release of the right of way, which was accepted by the company through its agent, in lieu of the subscription, and as the road has been located on this way, it will not be a violation of the rule which excludes parol evidence of an agreement made contemporaneously with a written contract, as it is generally applied, to allow the parol agreement and its performance as evidence of an accord and satisfaction. In *Smitherman* v. *Smith*, 3 Dev. & Bat. 89, suit was brought on the indorsement of a negotiable bond. It was agreed by parol between the indorser and the indorsee, that if the former would execute to

the latter a deed for a tract of land, the latter would strike out the indorsement, and release the indorser from liability thereon, and the indorser did afterward execute a deed for the tract of land, which was accepted by the indorser. Evidence of this parol agreement and its performance by the defendant, was offered on the trial of the case, and was objected to on the same ground on which the objection in this case is urged, and excluded. But the learned judge who delivered the opinion of the court on appeal said: "It seems to us, that the court misconceived the object of the defendant. It was not to set up by parol evidence an executory contract, made at the time of the endorsement, variant from that which the law raised from the written endorsement itself; but it was intended to show from the agreement respecting the land, entered into at the time of the endorsement, and from the endorsee's taking the deed for that very tract of land at a subsequent time, a subsisting agreement carried into full execution by the parties subsequent to the time of the endorsement, so as to amount to an accord and satisfaction of the defendant's liability under the written endorsement. In this light we think the evidence was admissible. The defendant wished to shew by the evidence that he was discharged from the indorsement, by the indorsee's subsequently receiving satisfaction, by accepting a deed for the land; and that the accord was repeated by the parties at the time the deed was accepted, was a fact which might fairly be inferred by the jury from the evidence. We are of opinion that there must be a new trial."

If the facts were admissible in evidence and constituted a defence when proved, it must follow that it is competent and proper to allege them in the answer. Regarding this case as in point here, and approving the doctrine laid down, we must hold that it was proper for the defendant to allege the parol agreement and its performance as an accord and satisfaction.

But there is another view of the question which also re-

sults in the conclusion that the paragraph of the answer in question was a good defence. It is this: the instrument of writing on which the suit was brought is not a subscription to the capital stock of the plaintiff or of any other railroad company. It is a mere authority to the persons who are named it it, to render the subscribers liable when they, in accordance with the terms of the writing, find a company willing to accept the terms proposed, and when the proposed subscriptions shall have been assigned or transferred to such company. It was a power or authority to the persons named therein, not coupled with an interest, and therefore revocable by the parties signing it at any time before it was executed. The persons named in it were not trustees or agents of any railroad company, but were simply the agents of the parties signing the same. The instrument amounted to nothing more than an offer to contract, when another contracting party could be found and had accepted the terms proposed. It was no more a contract than the offer of a reward for the doing of an act is a contract, before the act has been done for which the reward is to be paid. Chitty Contracts, 8, 9, and 10; Addison Contracts, 15, title, Assent of Parties. The demurrer to the paragraph of the answer in question was rightly sustained, then, because that paragraph shows that the proposed subscription was cancelled and withdrawn before its transfer to the railroad company, and at a time when the defendant might legally retract his offer, whether any consideration was given by him for the privilege of doing so or not.

The next question for our consideration and decision is as to the correctness of the ruling of the court, in its refusal to grant the plaintiff a new trial. The reasons for which the new trial was asked are, first, that the decision of the court was not sustained by sufficient evidence and was contrary to law; second, the admission of parol evidence of the agreement made at the time of executing the writing on which the suit is brought, as set up in the second paragraph of the answer; third, the admission of evidence of a contract or

conversation made and had, with Enoch White, without showing first, or at any time, that he was the agent of said trustees or assignors; fourth, the same as to evidence of a contract with Samuel White, with reference to the subscription, without first showing the agency of said White.

It is true, that to render the declarations of an agent admissible to bind his principal, the agency must appear. *The Trustees of the Wabash and Erie Canal* v. *Bledsoe*, 5 Ind. 133.

So in order to bind the principal by the contract of the agent, the fact of the agency must be made to appear. But the view which we have taken of this case, in considering the sufficiency of the second paragraph of the answer, renders it unnecessary that we should inquire whether these principles were disregarded by the court in the trial of this case or not. Without the interposition of any agent on the part of the railroad company, we think the defendant had a right to retract his offer of a subscription before it was accepted by the company. The admission of the evidence of the parol agreement was proper, according to the authority above quoted, for the purpose of proving an accord and satisfaction by the release of the right of way to the company. There can hardly be any question as to the agency of the party who took the release, for the reason that the company accepted the right of way and located its road thereon. If there was no positive proof of previous authority, it might have been inferred from the subsequent ratification of the act.

The evidence shows that the figure five in the amount of the subscription had been erased before the paper was transferred to the company, and the agent of the company who received the transfer testified that he was fully informed at that time of all that had been done with reference to it. We think that the finding of the court was correct.

The judgment is affirmed, with costs.

*W. Eggleston* and *N. Harvey*, for appellant.

*B. E. Rhoads, M. G. Rhoads,* and *J. B. Cheadle*, for appellee.